## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

JAMES M. FREELAND, III,       :
                                    :

          Plaintiff            :
                                    :

          v.                   :       Civ. No. 13-1736-LPS
                                    :

CAROLYN W. COLVIN, Acting   :
Commissioner of Social Security,  :
                                    :

          Defendant.       :

Vanessa L. Kassab, Doroshow, Pasquale, Krawitz & Bhaya, Wilmington, Delaware.

     Attorney for Plaintiff.

Charles M. Oberly, III, United States Attorney, and Heather Benderson, Special United States Attorney, District of Delaware, Wilmington, DE.

Nora Koch and Timothy Riley, Social Security Administration, Philadelphia, PA.

     Attorneys for Defendant.

## **MEMORANDUM OPINION**

September 15, 2015
Wilmington, Delaware

STARK, U.S. District Judge:

## I. INTRODUCTION

Plaintiff James M. Freeland, III ("Freeland" or "Plaintiff") appeals from a decision of Defendant Carolyn W. Colvin, the Acting Commissioner of Social Security ("Commissioner" or "Defendant"), denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title II of the Social Security Act, 42 U.S.C. §§ 401-34; 1381-1383. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

Presently pending before the Court are cross-motions for summary judgment filed by Freeland and the Commissioner. (D.I. 13, 15) Freeland asks the Court to reverse and remand Defendant's decision. (D.I. 13) Defendant requests that the Court affirm his decision denying Plaintiff's application for benefits. (D.I. 15) For the reasons set forth below, the Court will deny Plaintiff's motion and grant Defendant's motion.

## II. BACKGROUND

### A. Procedural History

Freeland filed his application for SSI on January 29, 2010. He filed his application for DIB on January 11, 2010. Freeland alleged disability beginning November 13, 2009. (D.I. 10 ("Tr.") 73-74) The application was denied in June, 2010, and was again denied on December 1, 2010. Freeland filed a written request for a rehearing on December 28, 2010. On May 15, 2012, a hearing was held before an administrative law judge ("ALJ"), who issued a decision affirming the denial on May 22, 2012. Freeland filed a request for review by the Appeals Council on June 1, 2012, which was denied on August 22, 2013. (Tr. 1-3)

On October 21, 2013, Freeland filed a Complaint seeking judicial review of the ALJ's

1

May 22, 2012 decision. (D.I. 2) Freeland moved for summary judgment on April 13, 2015. (D.I. 13) Commissioner filed a cross-motion for summary judgment on May 13, 2015. (D.I. 15)

## B.  Factual Background

### 1.  Plaintiff's Medical History, Treatment, and Conditions

Freeland was thirty-five (35) years old when he applied for DIB and SSI in January 2010. (Tr. 153) He attended high school through the twelfth grade, until he was incarcerated. (Tr. 45) While incarcerated, he earned a GED. (Tr. 45) Freeland is not married, but lives with his fiancee, her three children, and his daughter. (Tr. 44) He has received training in lead abatement, has held various jobs at hotels, and has worked as a line cook at Pizza Hut. (Tr. 46-49) Freeland has not been employed since 2010. (Tr. 46) Freeland alleges he became disabled beginning November 13, 2009. (Tr. 73-74) He asserts his disability arises from severe traumatic cervical and lumbar degenerative disc disease, arising from multiple motor vehicle accidents. (D.I. 14)

The record contains treatment or other reports from the following physicians: Drs. Senu-Oke (Tr. 384-89), Dowling (687-91), Downing (291-321, 349-71, 611-14), Yalamanchili (701-19, 720-23), Witherell (322-48), Wien (615-20), Falco (399-400, 403-50, 451-505), Rudin (547-68, 516-17), Sebastini (635-46), Zhu (425-28), Sokoloff (401-02), Caristo (665-86), Al-Amin (432-35, 499-502), and Kalamchi (512-15, 576-78).

Other professionals' interactions with Freeland or reviews of his medical history are also part of the record before the court. These non-treating practitioners include Drs. Dees and Kataria, who performed a consultative review of Freeland's medical records as part of his examination for the Social Security Administration. (Tr. 507-08, 571)

2

## a. Disc damage/joint disease/back pain

Freeland was involved in motor vehicle accidents in July and September, 2007 (Tr. 316, 330, 399), after which he experienced severe back pain. In the years following the accidents, from September 2007 through June 2009, Freeland received numerous cervical and lumbar steroid injections. (Tr. 291-371)

An MRI of the lumbar performed in February 2009 showed a central disc protrusion affecting his L4-L5 (lumbar) vertebrae, as well as a degenerative spine disease, spondylolysis, at L5. (Tr. 396–97) Later, in May, 2009, an MRI of the spine showed disc protrusions at C3-C4 and C4-C5, as well as spondylolisthesis at C5-C6. (Tr. 394-95) Doctors also observed that the neural foramina were narrowed bilaterally due to endplate spurring and that the disc space was narrowed at the C5-C6 level. (Tr. 395) Later, an EMG suggested a right L5 and/or S1 motor radiculopathy. (Tr. 391)

On November 13, 2009, the alleged onset date of disability, a CT scan showed "[l]arge tears of the annulus fibrosis from L3-L4 to L5-S1." (Tr. 398) Shortly thereafter, Freeland started receiving treatment from Dr. Falco. Under the care of Drs. Falco and Rudin, Freeland underwent an L5 laminectomy and L5-S1 spinal fusion on June 3, 2010. (Tr. 516) In the months following his surgery, Freeland experienced a marked improvement in his condition. He reported minimal discomfort in his back, did not need physical therapy, and had functional motor strength. (Tr. 550)

In October 2010, Freeland's condition was complicated by another motor vehicle accident. (Tr. 621-34) Following this third accident, Freeland reported feeling a significant amount of pain in his back and legs, as well as persistent headaches. (Tr. 642) During this

3

period, Freeland's doctors excused him from work for several months. (Tr. 644, 655) Freeland was also treated with a hardware injection block. (Tr. 658) A subsequent CT scan showed L5-S1 posterior fusion changes with pedicular screws and interconnecting rods, along with residual spondylosis and disc bulges at the L3-L4 and L4-L5 levels. (Tr. 723)

In September, 2011, Freeland stopped treatment with Dr. Rudin and started treatment with Dr. Yalamanchili, who recommended that Freeland undergo surgery. Specifically, Dr. Yalamanchili recommended that Freeland have a cervical fusion and a C5-C6 anterior cervical discectomy for decompression of the spinal cord. (Tr. 703) This procedure took place in January 2012. (Tr. 699)

### b. Residual Functional Capacity

On May 24, 2010, Dr. Tom Dees reviewed Freeland's medical records and provided a Residual Functional Capacity ("RFC") assessment summarizing all of the available medical and examining source opinions. Dr. Dees found that Freeland retained the ability to occasionally lift or carry twenty pounds, frequently lift or carry ten pounds, stand and sit for six hours each day, and occasionally climb, balance, stoop, kneel, crouch, and crawl. (Tr. 507-508) Dr. Dees' assessment was later reviewed and affirmed by Dr. Kataria. (Tr. 571)

### 2. The Administrative Hearing

Freeland's administrative hearing took place via video conference on May 15, 2012. Freeland, who was represented by counsel, appeared from New Castle, Delaware, while the ALJ presided over the hearing in Dover, Delaware. (Tr. 20)

### a. Plaintiff's testimony

Freeland testified that he is 37 years old, 6 feet 3 inches tall, and weighs about 225

4

pounds. (Tr. 43) He attended high school through the twelfth grade and subsequently earned a GED while incarcerated. (Tr. 45) He lives with his fiancee and her three daughters, along with his biological daughter. (Tr. 44) Freeland holds a driver's license and drives between five and ten miles a day. He indicated that he had recently moved from a house to an apartment because he could no longer mow the lawn, use the stairs, or maintain the yard. (*Id.*) Freeland testified that, prior to 2010, he worked as a night auditor at the Holiday Inn Express. (Tr. 46) In this role, he took reservations, delivered bills, and restocked the hotel's market, paper, and printers. (*Id.*) While working at the Holiday Inn Express, Freeland stood between six and seven hours a day and regularly helped customers with their luggage. (Tr. 48) Before working at the Holiday Inn Express, Freeland worked as a line chef at Pizza Hut, where he worked in eight hour shifts and would stand for the entire shift. (Tr. 49) Freeland testified that he would not be able to go back to any of his previous jobs because the jobs were "very strenuous to the body" and involved a lot of movement, bending, and walking up and down stairs. (Tr. 50-51) Freeland indicated that he has not worked since October 2010, the date of his third motor vehicle accident. (Tr. 47)

Freeland further testified that he experiences pain and tenderness in his neck, has trouble swallowing, and is unable to lift anything over ten pounds. (Tr. 51) He indicated that he feels a shooting nerve pain from his thighs to his knee caps (Tr. 52), and that his normal pain level is between seven and eight on a ten-point scale (Tr. 53). According to Freeland, his back pain, in tandem with his medicines, has led to insomnia. (Tr. 54)

When describing his functional capabilities, Freeland indicated that he can do grocery shopping, but is unable to wait in line to check out. (Tr. 55) He indicated that he can stand, but only for ten to fifteen minutes at a time, and can only sit for two hours at a time. (Tr. 56)

Freeland further indicated that he does not perform any chores around the house, but that he does cook from time to time. (Tr. 58) Freeland testified that in his typical day, he wakes up, takes his daughter to school, then returns home and rests his back for four hours until he has to return to pick his daughter up from school. (Tr. 60-61).

### b. Vocational Expert's testimony

An independent vocational expert ("VE"), Cristina Cody, also testified at the hearing. (Tr. 65-72) The VE considered an individual with Freeland's age, weight, work experience, and level of education, who can lift ten pounds frequently and twenty pounds occasionally, can stand for 30 minutes to an hour and sit for 30 minutes to an hour, can perform "light work activities," and cannot climb stairs or regularly turn his neck. (Tr. 68) The VE found that such a person would be able to perform some work at "both the light and sedentary exertion level[s]." (*Id.*) Specifically, the VE opined that an individual with the listed constraints would be able to work as a general clerk, a file clerk, an information clerk, or a data clerk. (Tr. 68-69) When asked to consider the effect of alternating between sitting and standing throughout the work day, the VE opined that employers likely would not have a problem with such a person switching between sitting and standing positions, as long as the person maintained productivity while transitioning between the two positions. (Tr. 71)

### 3. The ALJ's Findings

The ALJ concluded that Plaintiff's medical conditions were not disabling. In reaching this conclusion, the ALJ first considered the nature and severity of Freeland's physical impairments. (Tr. 22-23) The ALJ determined that Freeland suffers from cervical and lumbar degenerative disc disease and diabetes, and that both of these conditions qualify as severe

impairments that significantly limit Freeland's ability to perform basic work activities. (Tr. 23)

The ALJ further found that although Freeland's impairment was subjectively severe, there was insufficient objective evidence to meet the requirements of a listing in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 22-23) Specifically, the ALJ found that Freeland did not meet the requirements for any disorders of the spine. (Tr. 23)

The ALJ next evaluated the record and found that Freeland has the RFC to perform light work, and is able to stand "for 30 minutes to an hour and sit for 30 minutes to an hour, consistently or on an alternate basis 8 hours a day" and that he should "avoid heights, hazardous machinery, temperature and humidity extremes, climbing stairs, ropes, and ladders, and [that] he should avoid repetitive neck turning and overhead reaching." (*Id.*) In reaching this conclusion, the ALJ recounted Freeland's statements regarding the amount of pain he experiences on a daily basis, acknowledged that Freeland is unable to perform most household chores, and recited Freeland's daily routine. After recounting Freeland's testimony, the ALJ found that, while most of it was credible, Freeland's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible. (Tr. 25) The ALJ justified his credibility determination by identifying inconsistencies between Freeland's testimony and the medical record. Specifically, the ALJ discussed a series of medical reports and progress notes that describe improvements in Freeland's condition. For example, one progress note indicates that Freeland "felt great with only occasional discomfort," while another indicates that Freeland described his pain as "tolerable." (*Id.*) The ALJ further noted that Freeland was not taking any pain medication. (Tr. 25-26) Finally, the ALJ considered the RFC report issued by Drs. Dees and Kataria. (Tr. 26) These reports indicated that Freeland is capable of light work, with a

limited ability to push/pull, postural limitations, and limited reaching in all directions. (Tr. 506-11) The ALJ found these reports credible insofar as they were consistent with his RFC conclusions, but afforded little weight to the consultants' finding that Freeland could occasionally climb. (Tr. 26)

Relying on the testimony of the VE, the ALJ found that Freeland's RFC prevented him from returning to any of his prior jobs. (Tr. 26) However, the ALJ also determined that Freeland's RFC was sufficient for Freeland to work as a bill sorter, general clerk, file clerk, information clerk, or data clerk. (Tr. 27) As a result, the ALJ found that Plaintiff had "not been under a disability . . . from November, 13, 2009 through [May 22, 2012]." (Tr. 28)

Specifically, the ALJ found as follows:

> 1.    The claimant meets the insured status requirements of the Social Security Act through September 30, 2013.
>
> 2.    The claimant has not engaged in substantial gainful activity since November 13, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3.    The claimant has the following severe impairments: cervical and lumbar degenerative disc disease and diabetes (20 CFR 404.1520(c) and 416.920(c)).
>
> 4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520((d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except that he is limited to stand for 30 minutes to an hour and sit for 30 minutes to an hour, consistently or on an alternate basis 8 hours a day, or at will, he should avoid heights,

8

hazardous machinery, temperature and humidity extremes, climbing stairs, ropes, and ladders, and he should avoid repetitive neck turning and overhead reaching.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on October 21, 1974 and was 35 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  The claimant has acquired work skills from past relevant work (20 CFR 404.1568 and 416.968).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1569, 404.1569(a), 404.1568(d), 416.969, 416.969(a), and 416.968(d)).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from November 13, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 22-28)

## III.  LEGAL STANDARDS

### A.  Motion for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 415 U.S. 574, 586 n.10 (1986). A party asserting that a fact cannot be – or, alternatively, is – genuinely disputed

must support its assertion either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita,* 415 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586–87; *see also Podohnik v. U.S. Postal Service,* 409 F.3d 584, 594 (3d Cir. 2005) (stating that party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). However, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 411 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (internal citations omitted); *see also Celotex Corp. v.*

10

*Catrett,* 411 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

**B.     Review of the ALJ's Findings**

The Court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Monsour Med. Ctr. v. Heckler,* 806 F.2d 1185, 1190 (3d Cir. 1986). "Substantial evidence" means less than a preponderance of the evidence but more than a mere scintilla of evidence. *See Rutherford v. Barnhart,* 399 F.3d 546, 552 (3d Cir. 2005). As the United States Supreme Court has noted, substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988).

In determining whether substantial evidence supports the Commissioner's findings, the Court may not undertake a de novo review of the Commissioner's decision and may not re-weigh the evidence of record. *See Monsour,* 806 F.2d at 1190. The Court's review is limited to the evidence that was actually presented to the ALJ. *See Matthews v. Apfel,* 239 F.3d 589, 593-95 (3d Cir. 2001). However, evidence that was not submitted to the ALJ can be considered by the Appeals Council or the District Court as a basis for remanding the matter to the Commissioner for further proceedings, pursuant to 42 U.S.C. § 405(g). *See Matthews,* 239 F.3d at 592. "Credibility determinations are the province of the ALJ and only should be disturbed on review if not supported by substantial evidence." *Gonzalez v. Astrue,* 537 F.Supp.2d 644, 657 (D. Del. 2008) (internal quotation marks omitted).

11

The Third Circuit has explained that:

> A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion.

*Kent v. Schweiker,* 710 F.2d 110, 114 (3d Cir. 1983).

Thus, the inquiry is not whether the Court would have made the same determination but, rather, whether the Commissioner's conclusion was reasonable. *See Brown v. Bowen,* 845 F.2d 1211, 1213 (3d Cir. 1988). Even if the reviewing Court would have decided the case differently, it must give deference to the ALJ and affirm the Commissioner's decision if it is supported by substantial evidence. *See Monsour,* 806 F.2d at 1190-91.

## IV.    DISCUSSION

### A.    **Disability Determination Process**

Title II of the Social Security Act, 42 U.S.C. § 423(a)(1)(D), "provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability." *Bowen v. Yuckert,* 482 U.S. 137, 140 (1987). Title XVI of the Social Security Act provides for the payment of disability benefits to indigent persons under the SSI program. 42 U.S.C. § 1382(a). A "disability" is defined for purposes of both DIB and SSI as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled "only if his physical or mental impairment

12

or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Barnhart v. Thomas,* 540 U.S. 20, 21-22 (2003) .

In determining whether a person is disabled, the Commissioner is required to perform a five-step sequential analysis. *See* 20 C.F.R. §§ 404.1520, 416.920; *Plummer v. Apfel,* 186 F.3d 422, 427–28 (3d Cir. 1999). If a finding of disability or nondisability can be made at any point in the sequential process, the Commissioner will not review the claim further. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step one, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i) (mandating finding of nondisability when claimant is engaged in substantial gainful activity). If the claimant is not engaged in substantial gainful activity, step two requires the Commissioner to determine whether the claimant is suffering from a severe impairment or a combination of impairments that is severe. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii) (mandating finding of nondisability when claimant's impairments are not severe), 416.920(a)(4)(ii). If the claimant's impairments are severe, the Commissioner, at step three, compares the claimant's impairments to a list of impairments that are presumed severe enough to preclude any gainful work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Plummer,* 186 F.3d at 428. When a claimant's impairment or its equivalent matches an impairment in the listing, the claimant is presumed disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If a claimant's impairment, either singly or in combination, fails to meet or medically equal any listing, the analysis

continues to steps four and five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

At step four, the Commissioner determines whether the claimant retains the RFC to perform his past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv) (stating that claimant is not disabled if claimant is able to return to past relevant work); *Plummer,* 186 F.3d at 428. A claimant's RFC is "that which [the] individual is still able to do despite the limitations caused by his or her impairment(s)." *Fargnoli v. Halter,* 247 F.3d 34, 40 (3d Cir. 2001). "The claimant bears the burden of demonstrating an inability to return to her past relevant work." *Plummer,* 186 F.3d at 428.

If the claimant is unable to return to her past relevant work, step five requires the Commissioner to determine whether the claimant's impairments preclude her from adjusting to any other available work. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (mandating finding of nondisability when claimant can adjust to other work); *Plummer,* 186 F.3d at 428. At this last step, the burden is on the Commissioner to show that the claimant is capable of performing other available work before denying disability benefits. *See Plummer,* 186 F.3d at 428. In other words, the Commissioner must prove that "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Id.* In making this determination, the ALJ must analyze the cumulative effect of all of the claimant's impairments. *See id.* At this step, the ALJ often seeks the assistance of a VE. *See id.*

### B. Plaintiff's Argument on Appeal

Freeland presents three arguments in his appeal. He argues that the ALJ erred: (1) in his assessment of Freeland's RFC; (2) by relying on the statements of Dr. Kalamchi in finding that

14

Freeland is able to perform "light duty" work; and (3) by failing to offer the vocational expert a hypothetical question that accounted for all of Freeland's functional limitations. The Court considers each of these arguments in turn.

### 1.  Whether the ALJ erred in assessing Plaintiff's RFC

Freeland argues that, in making his RFC determination, the ALJ mischaracterized and ignored evidence. Specifically, Freeland contends that the ALJ failed to consider treatment notes from Dr. Yalamanchili, dated September 14, 2011 to April 9, 2012; treatment notes from Dr. Rudin, dated December 29, 2010; records from Freeland's physical therapy center, Dynamic Physical Therapy; and evidence of pain and sleep disturbance. (D.I. 14) Freeland asserts that, because of these omissions, the ALJ's decision is not supported by substantial evidence. In response, the Commissioner argues that the treatment notes from Dr. Yalamanchili were not admitted into the record until after the ALJ issued his decision. (D.I. 16) The Commissioner further contends that each of the other notes and conditions referenced by Freeland were explicitly considered and discussed by the ALJ. (*Id.*) The Court concludes that there is substantial evidence to support the ALJ's assessment of Freeland's RFC.

In making his RFC determination, the ALJ relied on Freeland's testimony from the hearing, reports and progress notes from Freeland's doctors and therapists, and the RFC analysis performed by Drs. Dees and Kataria. At the hearing, Freeland explained how his injuries impact his daily life and the extent to which he is able to perform work. (Tr. 43-65) The ALJ considered this evidence when determining Freeland's RFC and assigned it considerable weight. (*See* Tr. 25) The ALJ also found that Freeland's statements regarding the severity and regularity of pain were of only limited credibility. (*See id.*) The ALJ's determination on credibility was

supported by evidence in the record the ALJ found to be inconsistent with Freeland's testimony. (*See id.*) In particular, Freeland's statements were, in the ALJ's view, at odds with the RFC analysis performed by Drs. Dees and Kataria, and with medical reports indicating that Freeland was not experiencing substantial hardship. (Tr. 25, 507-08, 571, 699-700) There is a reasonable basis for the ALJ's credibility determination, a determination which is for the ALJ to make. *See Gonzalez v. Astrue*, 537 F.Supp.2d 644, 657 (D. Del. 2008). Hence, the Court concludes that the ALJ's RFC finding is supported by substantial evidence.

The Court disagrees with Freeland's contention that the ALJ failed to consider several important pieces of evidence. First, the record indicates that Dr. Yalamanchili's notes were not admitted into the record until August 22, 2013, more than a year after the ALJ issued his decision. (Tr. 5) This Court, in reviewing the ALJ's decision, may only consider evidence that was made part of the record presented to the ALJ. *See Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001); *Eads v. Sec'y of HHS*, 983 F.2d 815, 817 (7th Cir. 1993). Accordingly, Dr. Yalamanchili's notes do not impact the substantial evidence analysis. Additionally, because the notes were later added to the record and were considered by the Appeals Council, the Court does not need to remand the case for further review. (Tr. 5)

Second, Freeland argues that the ALJ failed to consider Dr. Rudin's treatment notes from December 29, 2010. However, the ALJ explicitly referenced these treatment notes and incorporated them in his analysis of Freeland's RFC. (Tr. 25) Moreover, in a case such as this, where the claimant has a voluminous medical record, the ALJ is not required to "make reference to every relevant treatment note." *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001). The ALJ need only "consider and evaluate the medical evidence in the record consistent with his

16

responsibilities under the regulations and case law." *Id.*

Finally, Freeland argues that the ALJ failed to consider Freeland's physical therapy records and evidence of pain and sleep disturbance. The Court concludes that the ALJ adequately considered both of these sources of evidence. The ALJ discusses Freeland's course of physical therapy when describing and discussing Freeland's recovery from his June 2010 spinal surgery. (Tr. 25) Similarly, the ALJ references Freeland's sleeping difficulties when recounting and assessing Freeland's testimony from the hearing. (Tr. 24) To the extent that the ALJ did not discuss each reference to sleep problems, the decision would still be supported by substantial evidence, since the medical records do not indicate that the sleep problems significantly aggravate Freeland's condition.

### 2. Whether the ALJ erred in his reliance on Dr. Kalamchi

Plaintiff argues that the ALJ impermissibly relied on the opinion of non-treating physician Dr. Kalamchi in finding that Freeland has the ability to work in a light duty position with a limited ability to lift 20 pounds. (D.I. 14 at 14)[1] The Court finds that the ALJ did not err

---

[1]The Third Circuit subscribes to the "treating physician doctrine." *Masala v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993). Thus, in determining disability eligibility, an ALJ must accord treating physicians' reports "great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Plummer*, 186 F.3d at 429 (internal citation omitted). An ALJ may reject a treating physician's opinion "only on the basis of contradictory medical evidence." *Morales v. Apfel*, 225 F.3d 310, 318 (3d Cir. 2000). It follows that an ALJ cannot reject a treating physician's opinion "for no reason or for the wrong reason." (*Id.* at 317) More specifically, the ALJ "cannot disregard the opinion of a treating physician without referencing objective medical evidence conflicting with the treating physician's opinion and explaining the reasoning for rejecting the opinions of the treating physician." *Dass v. Barnhart*, 386 F.Supp.2d 568, 576 (D. Del. 2005). As indicated above, the ALJ did nto violate the treating physician doctrine. While the ALJ did consider the opinions of non-treating physicians, Freeland does not point to any statements from treating physicians that express a contradictory opinion.

17

in his use of Dr. Kalamchi's findings when determining Freeland's RFC.

The ALJ explicitly notes that he did not assign decisive weight to Dr. Kalamchi's opinions. Instead, the ALJ assigned the opinion weight "only to the extent she found the claimant is capable of a range of light work." (Tr. 26) In other words, the ALJ used Dr. Kalamchi's opinions to support and bolster a conclusion he had already reached, rather than as an independent justification for his RFC conclusions. That the ALJ only minimally relied on Dr. Kalamchi's opinion is bolstered by the fact that the ALJ dedicated just two sentences to his analysis of Dr. Kalamchi's opinions. (*Id.*) Furthermore, the ALJ's decision would be supported by substantial evidence even if the ALJ had not relied in any way on Dr. Kalamchi's opinion. Drs. Dees and Kataria also indicated that Freeland could perform light duty work and that Freeland could occasionally lift up to twenty pounds. (Tr. 507-08, 571) Moreover, Freeland does not point to contrary statements in the record from any of his treating physicians.

### 3.     The Hypothetical Posed to the VE

Finally, Freeland argues that the ALJ's hypothetical question posed to the vocational expert should have included the effects that pain in Freeland's neck and back would have on his ability to stand, walk, and sit. (D.I. 19 at 16) The Commissioner responds that these issues are identical to those already addressed above in connection with the ALJ's determination of Plaintiff's RFC. The Court agrees.

An ALJ's question to a vocational expert may only be used to determine a claimant's disability if "the question accurately portrays the claimant's individual physical and mental impairments." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984); *see also Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir. 2004) ("If . . . an ALJ poses a hypothetical question to a VE

that fails to reflect 'all of the claimant's impairments that are supported by the record . . . [the VE's testimony] cannot be considered substantial evidence.") (internal quotation marks omitted). As discussed above, substantial evidence supports the ALJ's determination of Freeland's RFC – which included limitations on his ability to sit and stand – so the hypothetical to the VE did not need to include other limitations. *See generally Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005).

## V. CONCLUSION

For the foregoing reasons, the Court will deny Plaintiff's motion for summary judgment and grant Defendant's motion for summary judgment. An appropriate Order will be entered.